Good morning. Rob Harley for Appellant. I'd like to start off somewhat inauspiciously by indicating a correction in my opening brief on page 5. Up at the top of the page, the quote by the prosecutor, I don't see anything in my notes that would provide me with a basis other than, you know, a racial concern. I compared that with the appellant's excerpt of record, which is a transcript of the Wodear proceedings, and I couldn't find it. So there appears to be a discrepancy, and it looks like the appellant's, excuse me, the appellee's excerpt, supplemental excerpt is more accurate, and I will go by that. And I apologize to the court. But nevertheless, this is an unprovoked attempt at murder case committed by a black defendant against white victims. Race in this case was huge. Our argument as a California decision was based on an unreasonable determination of facts. And issue number one, as far as the California opinion is concerned, and this is in our excerpts at page 174, the appellant court indicated Roe's past experience did not stack up favorably when compared with other jurors. He had no prior jury service, no law enforcement contact, no military service. However, the prosecutor noted, and also the Court of Appeals noted, that he served on a hung jury. So that's jury service. That's somewhat inconsistent, that determination right there in the excerpts, page 174. Another factor suggesting unreasonableness in the California court opinion is the site, the People v. Turner. That's a Supreme Court case cited 8 Cal 4 at page 170. And the Supreme Court stated, quote, sitting on a hung jury constitutes a legitimate concern for a prosecution which seeks a jury that can reach a unanimous verdict. Well, I would argue that's an equal concern for the defense who needs a unanimous verdict for an acquittal. Well, but a hung jury is much better for the defense than it is for the prosecution. And a lot of times a hung jury, you know, I mean, I think good defense lawyers, I mean, I've listened to enough of this both ways, is they just need one juror. I mean, and it obviously gives you a retrial. A retrial puts you further down the line, puts you in a better negotiating position. So I can't agree with you that a hung jury is equally troubling for a defendant as it is for a prosecutor. Well, I mean, like. I mean, anything short of a conviction is a good thing for a defendant. True. I have to agree. And one juror holding out buys time. Maybe not the ultimate, you know, you may get retried. A lot of cases don't get retried or they get lower, lesser charges. Well, at least in my experience, one holdout doesn't get me any justice because I end up going to trial again. 6-6 is a different story. But 11-1, I generally end up going and doing a retrial. So it doesn't help us out. It just delays the quote inevitable. But I share your concerns. It is kind of a victory if you can hang somebody up. But also, I think the mere fact that it was a hung jury is really a zero factor because we don't know what the split was. It could have been 6-6. It could have been 11-1. We don't know which side Mr. Rowe, this is juror number Rowe who sat in this hung jury. We don't know which side he was on. He could have been part of the prosecution voting for guilt. Well, except for two. One of the other things that people on hung juries, you know, I mean, which can be a concern, is they don't often report that as a good experience in being on a jury because, you know, you start something and you don't finish it. I mean, I think jurors have a sense of that they would like to. And hung juries mean that people didn't agree. You know, it could have been contentious. It could have been a number of things. So you don't have to, but, you know, what you know is that jury was not able to gain consensus and there is a potential for that person could have been the one hanger up. On the other hand, maybe they weren't, but it could have been a negative experience. And so isn't that enough there? I mean, it's not just, that's not race. Okay. That is a valid issue, the fact that I've heard jurors express hung jury as somewhat less than satisfying. But I've also heard jurors say that even though it was a guilty verdict, it wasn't a very pleasant experience, too. So jury trials by themselves with all the emotional drama that goes on is an unpleasant experience, whether they reach a unanimous verdict or whether they're unable to reach a unanimous verdict. So I share your thoughts. That's true. But I also heard jurors express during a selection process that it was an unpleasant experience having to sit in judgment of a human being and they would reluctantly, yes, if selected, participate in another trial. Well, I guess being on a hung jury, I guess what I'm saying, that's a race neutral reason for excusing someone. Yes, it could be a race neutral reason if you accept it on face value. But, you know, right here, I think we have to scrutinize it a little bit further than just because you sat in a hung jury. Because I think you have to go further and see if there are any case specifics or if there's a nexus. There's a Ninth Circuit authority that suggests there should be a nexus between the prior. Strike that. My argument is there should be some sort of nexus between the prior jury trial and the present jury trial, as far as issues that are likely to be raised in order to really make it a valid race neutral explanation. I mean, anybody, any prosecutor worth their salt could get up there and say, well, he sat in a hung jury as a subterfuge for a race motivated peremptory strike. So I think judicial. Well, at some level, don't we have to rely on the credibility finding of the court at the time that a race neutral or purportedly race neutral reason is given? In other words, if someone says my reason is because this person sat on a hung jury previously, you're saying that's pretextual. But how do we know that? I'm not saying that's pretextual. I'm saying it could be. And I think when you consider all the factors here, there's a good argument that it is pretextual. I mean, the obvious question, if you had prior jury trial experience, whether they reached a unanimous verdict or sat in a hung jury, would be what are some of the issues? Perhaps what were the races of the perpetrators involved? What type of case it was? We don't even know whether this was a civil case or a drunk driving case. We have absolutely no idea what the nature of the case was. I would suggest to you if somebody's really interested in a race neutral reason, they would certainly explore a little bit deeper the fact that this individual sat in a hung jury. Well, what type of case was it? Were there race issues involved? Who was the victim? Was there a victim? Things like that that could have established a better record for people like us that are trying to scrutinize it. Let me ask you a completely different question, and I want to oppose the counsel's view on this as well. Is there any reason for us to await the Supreme Court's decision in Johnson v. California before deciding this case? Is there a possibility that the court's analysis there will affect the outcome here? It pertains to the prima facie Batson case, the question that was accepted for decision. If it's just establishing a prima facie case, I'm not sure it would be worthwhile to delay it because I think here everybody would concede a prima facie case was established. I mean, the judge asked the prosecutor to be more than helpful. For the reasons. I beg your pardon? Asked for the reasons. Right. So I think we've gotten first that first Batson step, and if that's the only issue that's pending before the U.S. Supreme Court, I don't think it would be fruitful to wait the outcome, although I certainly have no objection to it. But here I think anybody would concede that there was a prima facie case, and even the prosecutor herself anticipated or knew a prima facie case was coming up because she explained her reasons on Juror Number Smith even before she was requested to do so. So my argument is that even though the hung jury here, I think the fact that it was the hung jury, the type of case it was, whether it was a civil or criminal case, was basically an insignificant factor. It is somewhat relevant, but it could have been developed into a much more relevant race-neutral factor if there was further exploration done by the people down below. But you're moving this closer to a requirement that there be something that resembles cause. And if I get the picture correctly, as long as we have preemptory challenges, we're ostensibly supposed to allow the parties to do as they choose with their preemptory challenges. And if that reason is totally irrational, it's perfectly OK as long as it isn't racist. And it's either racist or it's OK. And it may be based on astrology. But if that's what the party wants to do, they get to do it with their preemptory. And I'll just observe that sometimes I used to tell jurors that it's a compliment to be challenged preemptory. You don't know. Maybe a compliment. Maybe they think you're too strong a leader. We don't know. We don't care. Now, isn't that where we are? Unless we can say this is racist, we don't have to worry about how rational it might be. Isn't that true? I don't think they're mutually exclusive. I think there's a continuum. And the more irrational it becomes if somebody's looking for stars and saying, I don't like that person, and trying to communicate that to the court after a prima facie case has been made and saying, look at the stars, and I think that person... The only problem we might have is we might not believe them. But if that's the honest reason, it's OK. Well, I realize that if there's credibility involved. But my argument is there's no one dispositive factor, particularly in this case, which I consider a close call. And the more outrageous and the more inane the prosecutor asserts as a basis for a preemptory challenge after a prima facie case has been established and the burden of production is on the prosecutor to come up with something plausible, I would suggest that starts detracting from the credibility determination of the prosecutor. At this level, we have to conclude that the trial judge was wrong in not determining that that prosecutor was incredible. That is, the trial judge was wrong because he didn't discern that this prosecutor was lying. Is that about where we are? I don't think the judge has to conclude the prosecutor's a liar. I think the judge has to make a determination as to whether or not, you know, the explanation is, quote, plausible. I don't think the judge has to make a factual determination that the prosecutor's putting...lying. Well, all that's at issue is the motive, is it not? Yes, it is. And if this prosecutor says my motive is not racist and we say, oh, yes, it is, how do we get there without saying that prosecutor's a liar? No, that's where you have to look at all the peripheral issues. I know, to make that, to discern what's in that prosecutor's mind. And that's... Well, I think that to the extent we go beyond what I think are the limits of what can be done in this arena, we're going to lose the preemptory challenge as a phenomenon of litigation. That's frightening. That's frightening. And that is really frightening. And I think there is some support for that, frankly, in the Supreme Court. Well, I don't want to, you know, argue against that. But I think I still have some issues about the unreasonable determination in the court decision below because the California opinion, you know, praised the judge for initially rejecting the prosecutor's reason. I mean, he essentially found out that's a bogus reason. And I'm suggesting that inference is misplaced because the California Court of Appeals said that shows the judge engaged in a sincere and reasoned effort to scrutinize the prosecutor's reason. But according to Ninth Circuit opinion, McLean v. Prunty, the court's initial rejection of the prosecutor's reasons militate against a valid reason. That in and of itself, when the court catches the prosecutor in a reason that's so far-fetched, so unreasonably says, hey, that's not going to fly, that should tell we don't have to make the judgment call that the prosecutor's lying. But that certainly militates against a valid reason. Counsel, I think we understand your position and you have exceeded your time considerably. Thank you. We'll hear from Mr. Robinson. Good morning. May it please the Court, Warren Robinson, Deputy Attorney General for Respondent. In this case, the trial judge was very conscientious about his duties. He did scrutinize what the prosecutor said. At one point, he warned the prosecutor to be careful. At another point, with regards to juror or prospective juror Smith, he rejected an initial reason offered by the prosecutor, even though the trial court's rejection is not necessarily supported by the record. For myself only, I would say that I had some concerns about Smith in particular. The reasons given included things like I didn't think he would fit in, which sounds an awful lot like it might be a racial thought. I don't know what that means, might not fit in. And as the opinion below discusses, that some of the other things could be seen as proxies for race as well. What's your response to that concern? I don't think that the prosecutor's explanation that a prospective juror may not fit in is racist in any way whatsoever. And I would further point out that when the prosecutor- It could be, depending on the situation. But on its face, I don't believe it is. I mean, I'm reminded when I was younger of the kinds of things that used to be said about discriminatory policies at private clubs. And it was always that person, they're very nice, but they just won't fit in. And that seems like kind of a classic, at least potentially, discriminatory reason. And I would say that the trial court was very conscious of its duties. The prosecutor went on to say that Mr. Smith was young and expressed concerns about Mr. Smith's dress. Neither appellant nor his co-defendant disputed any of those two concerns. They didn't dispute any of the reasons- When you say his dress, you mean the earring, and he was wearing a red jersey, which the red jersey was- Was there significance discussed? I mean, I know in gang cultures red and blue mean things, but what was in the record? The record was that the prosecutor merely cited was he was- The prosecutor listed that as a reason. It was not disputed by appellant nor his co-defendant. I simply took it to mean an informal type dress, perhaps too informal for a courtroom setting to be wearing earrings and a jersey. But whatever the exact dress was, there certainly was no objection by the other side, and the trial court accepted that explanation. Another thing I would point out is that the prosecutor did accept or was willing to accept juror number four as a juror, and juror number four was a black person. I know that is not dispositive, but it is one indication that the other challenges were race neutral. From my reading of the transcript of the voir dire, that juror number four was actually on the jury, but nevertheless the prosecutor was certainly willing to accept him. I think what this boils down to is a case where we have a trial judge who was very conscious of his duties to make sure that there was not a Batson violation. He questioned the prosecutor, but when we look at this record, we see race neutral explanations as to all three prospective jurors, and there was no clear and convincing evidence that's been presented that the trial court's factual finding of good faith was incorrect. And therefore, this court should deny the appeal. Unless the court has any further questions, I'm concerned. Yes, should we wait for Johnson v. California? When the court asked that question, I happened to have some paperwork in front of me, and I found the following quote from Hernandez v. New York, where the Supreme Court said, once a prosecutor has offered a race neutral explanation for the preemptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot, and that is at 500 U.S. 352 at 359. I'm not sure if the United States Supreme Court is going to revisit that in Johnson, but there's no question here that the trial court found a prima facie case and the prosecutor then offered reasons. So I don't think there's any need to await the decision in that case. Okay. Thank you. Any other questions? Thank you, counsel. The case just argued is submitted, and we will move to Williams v. Reynolds. Thank you.
judges: Leavy, Graber, Callahan